UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CF FRESH, LLC,

                            Plaintiff,

v.                                                              1:20-CV-0884
                                                                (GTS/DJS)
CARIOTO PRODUCE, INC.; GREGORY CARIOTO;
and ANTHONY CARIOTO,

                            Defendants.
_____

APPEARANCES:                                   OF COUNSEL:

MEURS LAW FIRM PL                              STEVEN E. NURENBERG, ESQ.
  Counsel for Plaintiff and Intervenor-Plaintiffs
5395 Park Central Court
Naples, FL 34109

OSBORNE & FONTE                                ANDREW OSBORNE, ESQ.
  Co-Counsel for Intervenor-Plaintiffs B.C. Produce, Inc.,
  B & R Produce Packing Co., Inc., Garden Fresh Salad Co., Inc.,
  Matarazzo Bros. LLC, and Peter Condakes Co. Inc.
11 Vanderbilt Ave, Suite 250
Norwood, MA 02062

GLENN T. SUDDABY, Chief United States District Judge

## PRELIMINARY INJUNCTION

        Currently before the Court, in this action filed by CF Fresh, LLC ("Plaintiff") against

Carioto Produce, Inc., Gregory Carioto, and Anthony Carioto ("Defendants") under the

Perishable Agricultural Commodities Act ("PACA"), is Plaintiff's unopposed motion for a

preliminary injunction.  (Dkt. No. 18.)  For the reasons set forth below, Plaintiff's motion is

granted.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint asserts the following seven claims: (1) a  claim against Defendant Carioto Produce ("Defendant Produce") for breach of their agreement to pay Plaintiff for the produce at issue in the parties' transactions; (2) a claim for declaratory relief validating Plaintiff's PACA trust claim on the grounds that Plaintiff complied with the statutory requirements and preserved its rights as a PACA trust beneficiary; (3) a claim against Defendant Produce for enforcement of payment from the PACA trust assets because Defendant Produce is in possession, custody, and control of the PACA trust; (4) a claim against Defendant Produce for failure to maintain the PACA trust assets and the creation of a common fund by failing to maintain or possess sufficient PACA trust assets to fully satisfy all valid PACA trust claims; (5) a claim against Defendant Produce for failure to pay Plaintiff promptly pursuant to 7 U.S.C. § 499b(4); (6) a claim against Defendants Gregory Carioto ("Defendant G. Carioto") and Anthony Carioto ("Defendant A. Carioto") for a breach of their fiduciary duty to PACA trust beneficiaries as principals of Defendant Produce's PACA trust;  and (7) a claim against Defendants G. Carioto and A. Carioto for unlawful retention of PACA trust assets by failing to pay Plaintiff for its transactions with Defendant Produce.  (*See generally* Dkt. No. 1.) Familiarity with the factual allegations supporting these claims is assumed in this Preliminary Injunction, which is intended primarily for the review of the parties.

### B.      Relevant Procedural History

On August 5, 2020, Plaintiff filed a Complaint against Defendants asserting the above-listed seven claims.  (*See, supra*, Part 1.A. of this Preliminary Injunction; Dkt. No. 1.)  On September 1, 2020, Plaintiff filed a request for entry of default against Defendants.  (Dkt. No. 8.)

That same day, the Clerk of the Court granted Plaintiff's request and entered default against Defendants.  (Dkt. No. 9.)  On September 15, 2020, Church Brothers filed an unopposed motion for leave to intervene.  (Dkt. No. 11.)  On September 16, 2020, B & R Produce Packing Co., Inc., Garden Fresh Salad Co., Inc., Matarazzo Brothers LLC, and Peter Condakes Co., Inc., also filed an unopposed motion for leave to intervene.  (Dkt. No. 12.)  On October 23, 2020, Plaintiff filed identical motions for a temporary restraining order and for a preliminary injunction.  (Dkt. No. 17; Dkt. No. 18.)  That same day, the Court granted Plaintiff's motion for a temporary restraining order (Dkt. No. 19) because the injury in question is irreparable (the loss of $210,029.99 of PACA trust assets) and issued an order to show cause as to why a preliminary injunction should not be entered against Defendants.  (Dkt. No. 20.)  On October 28, 2020, U.S. Magistrate Judge Daniel J. Stewart granted the above-described motions to intervene.  (Dkt. No. 24.)  On October 30, 2020, all Intervenor-Plaintiffs except Plaintiff Church Brothers filed their Complaint.  (Dkt. No. 25.)  On November 2, 2020, Intervenor-Plaintiff Church Brothers filed its Complaint.  (Dkt. No. 31.)

      **B.**    **Briefing on Plaintiff's Motion**

          **1.**    **Plaintiff's Memorandum of Law**

Generally, in its motion, Plaintiff argues that the Court should issue a preliminary injunction for four reasons: (1) it has shown that Defendants dissipated (and/or threatened to dissipate) PACA trust assets, and thus irreparably harmed it due to the near-impossibility of a trust beneficiary to recover dissipated assets; (2) it has shown a probability of success on the merits because (a) Plaintiff (through affidavits and declarations) has shown that it and the Intervenor-Plaintiffs are collectively owed $210,029.99 for produce sold to Defendant Produce between June 2019 and March 2020, (b) the amount owed to Plaintiff and Intervenor-Plaintiffs is

undisputed by Defendants, (c) to date, Defendant Produce has failed to pay for the produce bought from Plaintiff and Intervenor-Plaintiffs, (d) Defendant Produce has no defense to these claims under PACA, and (e) Plaintiff and Intervenor-Plaintiffs have properly preserved their trust claims and the amount due as required under PACA and the accompanying federal regulations; (3) the balance of harm factor favors Plaintiff because (a) Plaintiff merely seeks to require Defendant Produce to comply with its pre-existing obligations under federal law (i.e., promptly make full payments on all produce related invoices), and (b) if the injunction is not issued, Defendant Produce can further dissipate the PACA trust assets; and (4) the Court should exercise its discretion and require no bond for the issuance of the inunction on the grounds that Defendant Produce already has at least $210,029.99 worth of trust assets from Plaintiff and Intervenor-Plaintiffs as security for the issuance of injunctive relief.  (*See generally* Dkt. No. 18, Attach. 1, at 2-12 [Plf.'s Mem. of Law].)

### 2.    Defendants' Failure to Respond

Despite having been served with Plaintiff's motion, Defendants failed to file a response to the motion by the deadline of October 30, 2020, and have not filed any response as of the date of this Preliminary Injunction.

## II.    GOVERNING LEGAL STANDARD

### A.    Standard Governing a Motion for a Preliminary Injunction

"'The purpose of a preliminary injunction is . . . to preserve the relative positions of the parties.'"  *N. Am. Soccer League, LLC. v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37-38 (2d Cir. 2018) ("*N. Am. Soccer*") (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 [1981]).  "A preliminary injunction is an 'extraordinary and drastic remedy' . . . ; it is never awarded as of right . . . ."  *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations omitted). Generally, in the Second Circuit, a party seeking a preliminary injunction must establish the

following three elements: (1) that there is either (a) a likelihood of success on the merits and a balance of equities tipping in the party's favor or (b) a sufficiently serious question as to the merits of the case to make it a fair ground for litigation and a balance of hardships tipping decidedly in the party's favor; (2) that the party will likely experience irreparable harm if the preliminary injunction is not issued; and (3) that the public interest would not be disserved by the relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (reciting standard limited to first part of second above-stated element and using word "equities" without the word "decidedly"); *accord, Glossip v. Gross*, 135 S. Ct. 2726, 2736-37 (2015); *see also Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 825 (2d Cir. 2015) (reciting standard including second part of second above-stated element and using words "hardships" and "decidedly"); *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 38 (2d Cir. 2010) (holding that "our venerable standard for assessing a movant's probability of success on the merits remains valid [after the Supreme Court's decision in *Winter*]").

With regard to the first part of the first element, a "likelihood of success" requires a demonstration of a "better than fifty percent" probability of success. *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985), *disapproved on other grounds, O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, n.2 (1987). "A balance of equities tipping in favor of the party requesting a preliminary injunction" means a balance of the hardships against the benefits. *See, e.g., Ligon v. City of New York,* 925 F. Supp.2d 478, 539 (S.D.N.Y. 2013) (characterizing the balancing "hardship imposed on one party" and "benefit to the other" as a "balanc[ing] [of] the equities"); *Jones v. Nat'l Conference of Bar Examiners,* 801 F. Supp. 2d 270, 291 (D. Vt. 2011) (considering the harm to plaintiff and any "countervailing benefit" to plaintiff in balancing the equities); *Smithkline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.,* 99-CV-9214,

1999 WL 34981557, at *4-5 (S.D.N.Y. Sept. 13, 1999) (considering the harm to defendant and the "benefit" to consumers in balancing the equities); *Arthur v. Assoc. Musicians of Greater New York*, 278 F. Supp. 400, 404 (S.D.N.Y. 1968) (characterizing "balancing the equities" as "requiring plaintiffs to show that the benefit to them if an injunction issues will outweigh the harm to other parties"); *Rosenstiel v. Rosenstiel*, 278 F. Supp. 794, 801-02 (S.D.N.Y.1967) (explaining that, in order to "balance the equities," the court "will consider the hardship to the plaintiff . . . , the benefit to [the] plaintiff . . . , and the relative hardship to which a defendant will be subjected") [internal quotation marks omitted].[1]

With regard to the second part of the first element, "[a] sufficiently serious question as to the merits of the case to make it a fair ground for litigation" means a question that is so "substantial, difficult and doubtful" as to require "a more deliberate investigation." *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953); *accord, Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1205-06 (2d Cir. 1970).[2] "A balance of hardships tipping decidedly toward the party requesting a preliminary injunction" means that, as compared to the hardship suffered by other party if the preliminary injunction is granted, the hardship suffered by the moving party if the preliminary injunction is denied will be so much greater that it may be characterized as a "real hardship," such as being "driven out of business . . . before a trial could be held." *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48, 58 (2d Cir.

---

[1]      *See also Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12, n.2 (7th Cir. 1992) ("Weighing the equities as a whole favors X, making preliminary relief appropriate, even though the *undiscounted* balance of harms favors Y.") [emphasis added].

[2]      *See also Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997); *Rep. of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988); *City of Chanute v. Kansas Gas and Elec. Co.,* 754 F.2d 310, 314 (10th Cir. 1985); *R.R. Yardmasters of Am. v. Penn. R.R. Co.*, 224 F.2d 226, 229 (3d Cir. 1955).

1979); *Int'l Bus. Mach. v. Johnson*, 629 F. Supp.2d 321, 333-34 (S.D.N.Y. 2009); *see also Semmes Motors, Inc.,* 429 F.2d at 1205 (concluding that the balance of hardships tipped decidedly in favor of the movant where it had demonstrated that, without an injunctive order, it would have been forced out of business as a Ford distributor).[3]

With regard to the second element, "irreparable harm" is "'the single most important prerequisite for the issuance of a preliminary injunction.'"  *Faively Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 [2d Cir. 1999] [internal quotation marks omitted]).  "To satisfy the irreparable harm requirement, [p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm."  *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks omitted).  In other words, irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999).  Additionally, if the alleged injury could be remedied by an award of money

---

[3]      The Court notes that, under the Second Circuit's formulation of this standard, the requirement of a balance of *hardships* tipping *decidedly* in the movant's favor is added only to the second part of the first element (i.e., the existence of a sufficiently serious question as to the merits of the case to make it a fair ground for litigation), and not also to the first part of the first element (i.e., the existence of a likelihood of success on the merits), which (again) requires merely a balance of *equities* (i.e., hardships and benefits) tipping in the movant's favor.  *See Citigroup Global Markets, Inc.*, 598 F.3d at 36 ("Because the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips decidedly' in its favor . . . , its overall burden is no lighter than the one it bears under the 'likelihood of success' standard.") (internal citation omitted); *cf. Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp.2d 186, 192 (E.D.N.Y. 2013) ("[T]he *Winter* standard . . . requires the balance of equities to tip in the movant's favor, though not necessarily 'decidedly' so, even where the movant is found likely to succeed on the merits.").

damages, it does not amount to an irreparable harm. *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015).

With regard to the third element, the "public interest" is defined as "[t]he general welfare of the public that warrants recognition and protection," and/or "[s]omething in which the public as a whole has a stake[,] esp[ecially], an interest that justifies governmental regulation." Public Interest, *Black's Law Dictionary* (9th ed. 2009).

The Second Circuit recognizes three limited exceptions to the above-stated general standard. *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4.

First, where the moving party seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous "serious questions" standard but should grant the injunction only if the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim. *Id.* (citing *Able v. United States*, 44 F.3d 128, 131 [2d Cir. 1995]); *see also Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) ("A plaintiff cannot rely on the 'fair-ground-for-litigation' alternative to challenge governmental action taken in the public interest pursuant to a statutory or regulatory scheme.") (internal quotation marks omitted). This is because "governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." *Able,* 44 F.3d at 131.

Second, a heightened standard–requiring both a "clear or substantial" likelihood of success and a "strong" showing of irreparable harm"–is required when the requested injunction (1) would provide the movant with all the relief that is sought and (2) could not be undone by a judgment favorable to non-movant on the merits at trial. *Citigroup Global Markets, Inc.*, 598

F.3d at 35, n.4 (citing *Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 [2d Cir. 2006]); *New York v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) ("When either condition is met, the movant must show [both] a 'clear' or 'substantial' likelihood of success on the merits . . . *and* make a 'strong showing" of irreparable harm' . . . .") (emphasis added).

Third, the above-described heightened standard may also be required when the preliminary injunction is "mandatory" in that it would "alter the status quo by commanding some positive act," as opposed to being "prohibitory" by seeking only to maintain the *status quo*. *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4 (citing *Tom Doherty Assocs. v. Saban Entm't*, 60 F.3d 27, 34 [2d Cir. 1995]).[4]

Because the parties have demonstrated in their memoranda of law an adequate understanding of this legal standard, the Court need not, and does not, further elaborate on this legal standard in this Preliminary Injunction, which (again) is intended primarily for the review of the parties.

**B.     Standard Governing Claims Regarding PACA Trusts**

"Congress enacted PACA in 1930 to regulate the sale and marketing of produce in interstate commerce."  *Henry Avocado Corp. v. Z.J.D. Brother, LLC*, 17-CV-4559, 2019 WL 1586865, at *7 (E.D.N.Y. Apr. 12, 2019) (quoting *Am. Banana Co. v. Republic Nat'l Bank of N.Y., N.A.*, 362 F.3d 33, 36 [2d Cir. 2004]).  Under PACA, "purchasers of produce on credit are required to hold the produce and its proceeds, including accounts receivable and derivatives, 'in trust or the benefit of all unpaid suppliers or sellers of such commodities . . . until full payment of

---

[4]     Alternatively, in such a circumstance, the "clear or substantial likelihood of success" requirement may be dispensed with if the movant shows that "extreme or very serious damage will result from a denial of preliminary relief."  *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4 (citing *Tom Doherty Assocs. v. Saban Entm't*, 60 F.3d 27, 34 [2d Cir. 1995]).

the sums owing in connection with such transactions has been received by such unpaid suppliers [or] sellers.'" *C.H. Robinson c. v. Alanco Corp.*, 239 F.3d 483, 486 (2d Cir. 2001) (quoting 7 U.S.C. § 499e[c][2]); *John the Greek Co., Inc. v. Eaternity LLC*, 233 F. Supp. 3d 255, 358, (E.D.N.Y. 2017). Although courts within this circuit have not determined exactly how and when a PACA trust is created, "PACA clearly applies to situations in which two parties have formed an agreement to provide and purchase perishable commodities." *Henry Avocado Corp. v. Z.J.D. Brother, LLC*, 17-CV-4559, 2019 WL 1586865, at *8 (E.D.N.Y. Apr. 12, 2019) (collecting cases).

"PACA imposes a floating, non-segregated statutory trust on 'perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products . . . for the benefit of all unpaid sellers.'" *S. Katzman Produce Inc., v. Kato Food Corp.*, 16-CV-8116, 2016 WL 6561414, at *4 (S.D.N.Y. Oct. 26, 2016) ("*S. Katzman*") (quoting 7 U.S.C. § 499e[c][1]-[4]); *see also Am. Banana Co. v. Republic Nat'l Bank of N.Y., N.A.*, 362 F.3d 33, 38 (2d Cir. 2004) (holding that buyers are permitted to comingle PACA trust assets with their other assets). Specifically, PACA reprioritizes sellers' interests in the commodities and sales proceeds by making them superior to those of the buyers' creditors, including secured creditors. *Am. Banana Co.*, 362 F.3d at 37; *Henry Avocado Corp. v. Z.J.D. Brother, LLC*, 17-CV-4559, 2019 WL 1586865, at *7 (E.D.N.Y. Apr. 12, 2019). The Court also notes that the buyer "has a fiduciary obligation under PACA to repay the full amount of the debt owed to the PACA beneficiary," as a trustee. *S. Katzman*, 2016 WL 6561414, at *4 (citing *C.H. Robinson Co.*, 239 F.3d at 488); *see also Horizon Mktg. v. Kingdom Int'l Ltd,* 244 F. Supp. 2d 131, 135 (E.D.N.Y. 2003) ("Buyers

who dissipate or otherwise spend the proceeds of the trust without making full payment to the seller are in breach of their fiduciary duties.").  "[S] several courts in this circuit and others, have held that in PACA cases, individuals who are principals in corporations which bought produce, but failed to pay, are individually liable for breach of their fiduciary duties."  *Horizon Mktg. v. Kingdom Int'l Ltd,* 244 F. Supp. 2d 131, 145 (E.D.N.Y. 2003); *John the Greek*, 233 F. Supp. 3d at 358-59.

### C.      Standard Governing a Failure to Respond to a Motion

The non-movant's failure to respond to the motion lightens the movant's burden.  *See Kent v. New York State Public Employees Federation, AFL-CIO*, 17-CV-0268, 2020 WL 1531020, at *9 (N.D.N.Y. March 31, 2020) (Suddaby, C.J.) (applying a lightened burden when a non-movant willfully fails to respond to a motion for summary judgment).  Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[5]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party

---

[5]      *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]); *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at \*1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at \*2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.   ANALYSIS

### A.   Whether Plaintiff Has Shown It Will Suffer Irreparable Harm

After carefully considering the matter, the Court answers the question in the affirmative for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 18, Attach. 1 [Plf.'s Mem. of Law].)  To those reasons, the Court adds the following analysis, which is intended to supplement, and not supplant, Plaintiff's reasoning.

In this case, like other PACA cases, the irreparable harm is "the risk that a produce buyer will have dissipated the PACA trust without paying the produce seller, thus leaving the produce seller out of luck and out of money."  *Horizon Mktg.*, 244 F. Supp. 2d at 140; *see also Central Produce Corp. v. 34-18 M&M Corp.*, 17-CV-3841, 2017 WL 11487931, at \*2 (E.D.N.Y. July 14, 2017) (declaring that it is well settled that the risk that a PACA trustee will dissipate the trust amounts to an irreparable harm).  Because Plaintiff's economic position "cannot realize any returns on the sale of the crop when due," its ability to survive is at stake (especially given the COVID-19 pandemic).  *Id.* (quoting H.R. Rep. No. 98-453, at 3 [1983], *reprinted in* 1984 U.S.C.C.A.N. 405, 406).  Here, Plaintiff and Intervenor-Plaintiffs adduced evidence of Defendants' inability to maintain the requisite PACA trust assets, instead utilizing the funds to pay for a $75,000 insurance claim.  (Dkt. No. 18, Attach 3, at ¶¶ 16-17).  This inability to pay Plaintiff and Intervenor-Plaintiffs indicates that dissipation of the PACA trust assets has already begun.  *Central Produce Corp.*, 2017 WL 11487931, at \*2.  "[G]iven Defendants' failure to

appear and defend the instant action, Defendants' have not provided any countervailing evidence." *Home It, Inc., v. Wen*, 19-CV-7070, 2020 WL 353098, at *6 (E.D.N.Y. Jan 21, 2020).  Accordingly, the Court finds there is a substantial risk of irreparable harm should Defendants be permitted to liquidate their assets, and that injunctive relief is necessary to preserve the status quo.

> **B.    Likelihood of Success on the Merits**

After carefully considering the matter, the Court answers the question in the affirmative for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 18, Attach. 1 [Plf.'s Mem. of Law].)  To those reasons, the Court adds the following analysis, which (again) is intended to supplement, and not supplant, Plaintiff's reasoning.

"Under PACA, a seller loses the benefits of the statutory trust unless it informs the buyer of its intention to preserve its entitlement to the trust proceeds." *Horizon Mktg.*, 244 F. Supp. 2d at 140 (citing 7 U.S.C. § 499e[c][3]).  Section 499e(c)(4) indicates that notice may be given by "'ordinary and usual billing or invoice statements,' which must include specific language informing the buyer of the seller's intention to preserve its rights to the trust." *Id.* (quoting 7 U.S.C. § 499e[c][4]).  Here, Plaintiff has demonstrated that it and Intervenor-Plaintiffs individually satisfied the notice requirement (thereby preserving their interests in the PACA trust) by submitting unpaid invoices, all of which contain the required statutory language. Additionally, Defendants have not disputed that Plaintiff and Intervenor-Plaintiffs are entitled to payment.  Accordingly, having "established their entitlement to payment under PACA," Plaintiff has demonstrated its likelihood of success on the merits. *Id.*

C.      **Balance of Equities**

Lastly, the Court finds that the balance of the equities and the public interest in granting a preliminary injunction are both in favor of Plaintiff.  As this Court has previously found, the likelihood that Plaintiff will succeed on its claims means that the public interest would be served by protecting their statutory rights.  *See, e.g., DiMartile v. Cuomo*, 20-CV-0859, 2020 WL 4558711, at *11 (N.D.N.Y. Aug. 7, 2020) (Suddaby, C.J.) (discussing the public interests in protecting individual's constitutional rights).  Accordingly, under the facts and circumstances of this case, the Court can see no reason why Plaintiff's statutory rights should be treated differently.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for a preliminary injunction (Dkt. No. 18) is **<u>GRANTED</u>**; and it is further

**ORDERED** that, pending the pendency of this action, Defendant Carioto Produce, Inc., its agents, officers (including individual Defendants Gregory Carioto and Anthony Carioto), subsidiaries, assigns, and financial and banking institutions, shall not alienate, dissipate, pay over or assign any PACA Trust assets without the parties' agreement, until further Court Order, or until Defendant Carioto Produce, Inc., pays Plaintiff, Inc., and the aforementioned Intervenor-Plaintiffs, the sum of $210,029.99 by cashiers' check or certified check; and it is further

**ORDERED** that, under the PACA Trust, 7 U.S.C. § 499e(c)(2), the PACA Trust assets include perishable agricultural commodities received by Defendant Carioto Produce, Inc., in all transactions, all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products; and it is further

**ORDERED** that this Preliminary Injunction is binding upon the parties to this action, their officers, agents, employees, financial and banking institutions, or attorneys and all other persons or entities who receive actual notice of this Preliminary Injunction by personal service, including by email, facsimile transmission, priority mail, or Federal Express; and it is further

**ORDERED** that Plaintiff is not required to give security, because Carioto Produce, Inc., now holds $210,029.99 of PACA trust assets that are properties of Plaintiff and the aforementioned Intervenor-Plaintiffs, and this Preliminary Injunction merely requires Carioto Produce, Inc., to obey the requirements of federal law; and it is further

**ORDERED** that Plaintiff must serve Defendants, or their resident agent, or their counsel with a copy of this Preliminary Injunction by personal service, including by facsimile transmission, priority mail or Federal Express, within **THREE (3) BUSINESS DAYS** of the date of this Preliminary Injunction.

Dated: November 6, 2020
      Syracuse, New York

Glenn T. Suddaby
Chief U.S. District Judge