UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CF FRESH, LLC,

                        Plaintiff,

v.                                                          1:20-CV-0884
                                                               (GTS/DJS)

CARIOTO PRODUCE, INC., et al.,

                        Defendants.
_____

B.C. PRODUCE, INC., et al.,

                        Intervenor-Plaintiffs,

v.

CARIOTO PRODUCE, INC., et al.,

                        Defendants.
_____

CHURCH BROTHERS, LLC,

                        Intervenor-Plaintiff,

v.

CARIOTO PRODUCE, INC., et al.,

                        Defendants.
_____

APPEARANCES:                                        OF COUNSEL:

MEURS LAW FIRM PL                       STEVEN E. NURENBURG, ESQ.
  Counsel for Plaintiff and Intervenor-Plaintiffs
5395 Park Central Court
Naples, FL 34109

OSBORNE & FONTE                          ANDREW OSBORNE, ESQ.
  Co-Counsel for Intervenor-Plaintiffs B.C. Produce, Inc.,
  B & R Produce Packing Co., Inc., Garden Fresh Salad Co., Inc.,
  Matarazzo Bros., LLC, Peter Condakes Co., Inc., and
  Travers Fruit Co., Inc.

11 Vanderbilt Ave., Suite 250
Norwood, MA 02062

THOMPSON COBURN LLP                                   STEPHEN J. GRABLE, ESQ.
  Counsel for Nonparty Saratoga National Bank & Trust Company
488 Madison Avenue
New York, NY 10022

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this action filed by CF Fresh, LLC, ("Plaintiff CF Fresh") against Carioto Produce, Inc., Gregory Carioto, and Anthony Carioto (collectively, "Defendants") under the Perishable Agricultural Commodities Act ("PACA"), is the motion by Plaintiff CF Fresh and Intervening Plaintiffs Church Brothers, LLC, B.C. Produce, Inc., B & R Produce Packing Co., Inc., Garden Fresh Salad Co., Inc., Peter Condakes Company, Inc., and Travers Fruit Company, Inc., (collectively, "Plaintiffs") for adjudication of civil contempt against nonparty Saratoga National Bank and Trust Company ("the Bank") for failing to comply with the Court's Preliminary Injunction issued on November 6, 2020. (Dkt. No. 63.) For the reasons set forth below, Plaintiffs' motion is denied.

**I.     RELEVANT BACKGROUND**

    **A.     Plaintiff CF Fresh's Complaint and Relevant Procedural History**

Generally, liberally construed, Plaintiff CF Fresh's Complaint filed on August 5, 2020, asserts the following seven claims: (1) a claim against Defendant Carioto Produce, Inc., for breach of contract; (2) a claim against Defendants for declaratory relief to validate a PACA trust claim pursuant to 7 U.S.C. § 499e(c); (3) a claim against Defendant Carioto Produce, Inc., for enforcement of payment from the PACA trust assets pursuant to 7 U.S.C. § 499e(c); (4) a claim against Defendant Carioto Produce, Inc., for failure to maintain a PACA trust and for creation of

a common fund pursuant to 7 U.S.C. § 499b(4); (5) a claim against Defendant Carioto Produce, Inc., for failure to pay promptly pursuant to 7 U.S.C. § 499b(4); (6) a claim against Defendant Anthony Carioto and Defendant Gregory Carioto for breach of fiduciary duty; and (7) a claim against Defendant Anthony Carioto and Defendant Gregory Carioto for unlawful retention of PACA trust assets. (*See generally* Dkt. No. 1.)

On October 23, 2020, Plaintiff CF Fresh filed an emergency motion for a temporary restraining order and a motion for preliminary injunction. (Dkt. Nos. 17-18.) That same day, the Court granted Plaintiff CF Fresh's motion for a temporary restraining order and ordered Defendant Carioto Produce, Inc., to show cause why the Court should not enter the preliminary injunction. (Dkt. Nos. 19-20.) After Defendant Carioto Produce, Inc., failed to respond, the Court granted Plaintiff CF Fresh's motion for a preliminary injunction and issued Plaintiff CF Fresh's proposed injunction (the "PI Order"), which stated, in part, as follows:

> [P]ending the pendency of this action, Defendant Carioto Produce, Inc., its agents, officers (including individual Defendants Gregory Carioto and Anthony Carioto), subsidiaries, assigns, *and financial and banking institutions*, shall not alienate, dissipate, pay over or assign any PACA Trust assets without the parties' agreement, until further Court Order, or until Defendant Carioto Produce, Inc., pays Plaintiff, Inc., and the aforementioned Intervenor-Plaintiffs, the sum of $210,029.99 by cashiers' check or certified check.

(Dkt. No. 35, at 14 [emphasis added].)

On November 11, 2021, Plaintiffs filed the current joint motion for civil contempt against the Bank. (Dkt. No. 63.) On December 23, 2021, the Bank filed its opposition to Plaintiffs' motion for civil contempt. (Dkt. No. 68.) On December 30, 2021, Plaintiffs filed a reply in support of their motion for contempt (Dkt. No. 69), which the Court subsequently struck as an unauthorized memorandum of law (Dkt. No. 71).

    **C.**    **Summary of the Parties' Briefing on Plaintiffs' Motion**

### 1. Plaintiffs' Motion for Civil Contempt

Generally, in support of their motion for civil contempt, Plaintiffs set forth six arguments. (Dkt. No. 63-1, at 5-12.)

First, Plaintiffs argue that the Bank was bound by the terms of the PI Order because it received actual notice of it, in satisfaction of Fed. R. Civ. P. 65(d)(2). (*Id.* at 5-6.) Specifically, Plaintiffs argue that the Bank received the PI Order, which lists "financial and banking institutions," on April 13, 2021, after Plaintiffs sent the PI Order to the Bank's Chief Executive Officer, David DeMarco. (*Id.* at 6.) Plaintiffs also argue that the Bank's counsel, John J. Carusone, Jr., Esq. ("Attorney Carusone"), confirmed receipt of the PI Order on April 15, 2021. (*Id.*)

Second, Plaintiffs argue that the three elements of civil contempt are met, because (1) the PI Order is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the Bank did not diligently attempt to comply with the PI Order in a reasonable manner. (*Id.* at 6-9.) Specifically, Plaintiffs argue that the PI Order's explicit reference to "banking and financial institutions" and Attorney Carusone's representation that the Bank would place a hold on Defendants' account shows that the PI Order was clear and unambiguous. Additionally, Plaintiffs argue that the Bank's noncompliance is clear and convincing because, despite its attorney stating that the Bank would place a hold on Defendants' account on April 15, 2021, the Bank did not restrain the account until May 28, 2021, which allowed Defendants to withdraw at least $368,485.26. (*Id.* at 7-8; Dkt. No. 63-2, at 37-47.) Plaintiffs argue that the Bank did not diligently attempt to comply with the PI Order by restraining the account on April 15, 2021, when its counsel informed Plaintiffs that the Bank would place a hold on the account. (Dkt. No. 63-1, at 8-9.)

Third, Plaintiffs argue that the funds in the account at issue were presumptively PACA Trust Assets, which include Defendant Carioto Produce's inventories of perishable agricultural commodities, food or products derived from produce, accounts receivable, proceeds from the sale of produce or products, and assets commingled, purchased, or otherwise acquired with sales proceeds. (*Id.* at 9.) Plaintiffs argue that there is no evidence that the funds deposited in Defendants' account were derived from sources other than proceeds from their sales of produce, or, alternatively, that the assets became indistinguishable from the PACA Trust assets after the commingling. (*Id.* at 10.)

Fourth, Plaintiffs argue that the Bank's knowing failure to restrain the account over a forty-three-day period caused harm to Plaintiffs because, but for the Bank's inaction, $368,485.26 in PACA Trust assets would have remained in Defendants' account. (*Id.* at 10-11.)

Fifth, Plaintiffs argue that, because the Bank's noncompliance impaired their ability to recover the PACA Trust Assets withdrawn from the account, the Court should impose monetary sanctions against the Bank in the amount of $210,029.28. (*Id.* at 11-12.) Plaintiffs argue that this relief would place them in as good a position as if the Bank had complied with the terms of the PI Order. (*Id.*)

Sixth, Plaintiffs argue that they attempted to resolve the issue with the Bank by contacting Attorney Carusone on July 27, 2021, to discuss the Bank's potential liability for failing to restrain the account. (*Id.* at 12.) Plaintiffs state that, despite Attorney Carusone advising that he would discuss the matter with the Bank and follow up with Plaintiffs' counsel, no one has contacted Plaintiffs since July 27, 2021. (*Id.*)

###    2.    The Bank's Opposition to Plaintiffs' Motion for Civil Contempt

Generally, in opposition to Plaintiffs' motion for civil contempt, the Bank sets forth three

arguments. (Dkt. No. 68-1.)

First, the Bank argues that it is not a party or agent of Defendants, nor did it aid or abet Defendants in violating the PI Order, and therefore it cannot be held in contempt. (*Id.* at 11-13.) More specifically, the Bank argues that Plaintiffs fail to show that the Bank was in "active concert or participation" with Defendants in violating the PI Order because permitting routine banking transactions does not support a finding of "active concert or participation." (*Id.* at 11-12.) Simply stated, the Bank argues that, because the PI Order was never effective against it, the Bank cannot be held in contempt for failing to comply with the PI Order. (*Id.* at 13.)

Second, the Bank argues that it cannot be held in contempt because the PI Order is not clear and unambiguous. (*Id.* at 14-15.) The Bank (a full-service commercial bank) argues that it did not understand why it had received a copy of the PI Order or what it required the Bank to do. (*Id.* at 14.) The Bank argues that Defendants' continued withdrawals from their account long after the Court entered the PI Order on November 6, 2020, shows that the PI Order was not clear and unambiguous. (*Id.* at 14-15.) The Bank additionally argues that Plaintiffs' only evidence that the Bank understood the PI Order—the letter that Plaintiffs received from Attorney Carusone on April 15, 2021—does not indicate the Bank understood the PI Order, because the Bank never received a copy of the letter from its counsel, Attorney Carusone. (*Id.* at 15.)

Third, the Bank argues that Plaintiffs have not identified any purpose of holding the Bank in contempt. (*Id.* at 15-18.) The Bank argues that the voluntary, ongoing hold that it placed on Defendants' account on May 28, 2021, shows that contempt is unnecessary to ensure compliance with the PI Order. (*Id.* at 15.) The Bank also argues that Plaintiffs have not been harmed as a result of the Bank's purported noncompliance with the PI Order because Defendants' account contains $10,000 more than it did when the PI Order was first delivered to the Bank. (*Id.* at 16.)

The Bank argues that, had it placed a hold on the account upon initial receipt of the PI Order, Defendants may not have withdrawn additional funds, but they also would not have continued depositing funds into the account. (*Id.*) The Bank argues that Plaintiffs have not shown why it would be reasonable to shift the burden of Plaintiffs' inability to recover from Defendants to the Bank, especially considering the Plaintiffs waited more than six months to notify the Bank of the PI Order. (*Id.* at 17.)

## II.     RELEVANT PROCEDURAL LEGAL STANDARDS

Fed. R. Civ. P. 65(d)(2) states that the following persons, upon receiving actual notice of an injunction by personal service or otherwise, are bound by the court's order: "the parties"; "the parties' officers, agents, servants, employees, and attorneys"; and "other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." Fed. R. Civ. P. 65(d)(2).

> 'Actual notice' is defined as knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts. A notice is regarded in law as 'actual notice' where the person sought to be charged therewith either knows of the existence of the particular fact in question or is conscious of having the means of knowing it even though such means may not be employed by him or her.

*Fox v. Lee*, 15-CV-0390, 2018 WL 1187404, at *3 (N.D.N.Y. Feb. 5, 2018) (Hummel, M.J.) (quoting 58 Am. Jur. 2d Notice § 4 (2d ed., 2018)).

"A party or nonparty may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Fox*, 2018 WL 1187404, at *3 (N.D.N.Y. Feb. 5, 2018) (Hummel, M.J.) (internal quotation marks omitted). However, "Rule 65(d) codifies the

well-established principle that, in exercising its equitable powers, a court 'cannot lawfully enjoin the world at large.'" *People of State of N.Y. by Vacco v. Operation Rescue Nat.*, 80 F.3d 64, 70 (2d Cir. 1996) (quoting *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930)). Accordingly, to hold a nonparty in contempt of a court order, "'the [nonparty] must either abet the [party in the named order] or must be legally identified with him.'" *People of State of N.Y. by Vacco*, 80 F.3d at 70 (quoting *Alemite Mfg. Corp.*, 42 F.2d at 833).

### III. ANALYSIS

After carefully considering the matter, the Court denies Plaintiffs' motion for civil contempt for the following reasons.

The Court may hold the Bank in contempt if the Bank can be "legally identified" with Defendants or if the Bank "aided and abetted" Defendants in violating the preliminary injunction. *Fox,* 2018 WL 1187404, at *3; *People of State of N.Y.*, 80 F.3d at 70. "In assessing 'legal identity,' 'the critical inquiry is whether there is a substantial continuity of identity' between the two parties." *Id.* at *3 (quoting *People of State of N.Y. by Vacco*, 80 F.3d at 70). "A party seeking to hold a non-party in civil contempt for aiding and abetting must prove, by clear and convincing evidence, '(1) that the party subject to the court's mandate committed contempt; and (2) that [the non-party] assisted the enjoined party.'" *Kosher Sports, Inc. v. Queens Ballpark Co., LLC,* 10-CV-2618, 2011 WL 13266347, at *7 (E.D.N.Y. Aug. 26, 2011) (quoting *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002)).

Plaintiffs have not alleged facts indicating any "continuity of identity" between the Defendants and the Bank, meaning Plaintiffs must show that the Bank "aided and abetted" Defendants in violation of the PI Order for the Court to hold the Bank in contempt. To do so, Plaintiffs must rely on the Bank's "fail[ure] to restrain Carioto Produce's account" from April

15, 2021, when Attorney Carusone, acting on behalf of the Bank, informed Plaintiff CF Fresh by letter that a hold was placed on the account, and May 28, 2021, when the Bank actually implemented the hold.[1] (Dkt. No. 63-1, at 8; Dkt. No. 68, at ¶¶ 11-12.)[2]

As the Bank identifies in its opposition, the Second Circuit's recent decision in *Next Investors, LLC v. Bank of China* provides guidance on whether the continued withdrawals and deposits occurring within the six-week period constitute "aiding and abetting" for purposes of holding a nonparty bank in contempt. *Next Inv'rs, LLC v. Bank of China,* 12 F.4th 119 (2d Cir. 2021). Although *Next Investors, LLC* addresses issues in enforcing the disputed injunction due to principles of international comity and New York's separate entity rule, which are not at present in this case, the Second Circuit also held that "the district court appropriately exercised its discretion to deny [the plaintiff's] contempt motion because there are 'fair ground[s] of doubt' as to whether . . . the Banks were 'in active concert or participation' with Defendants within the meaning of Rule 65(d)." *Next Investors, LLC*, 12 F.4th at 131. Specifically, the Court stated it

> [had] never catalogued the activities that constitute aiding and abetting a defendant's violation of an asset-restraint order. Although *Defendants* may have violated the orders by withdrawing or transferring funds, *there is a "fair ground of doubt" as to*

---

[1]   Although the Bank argues that its "records do not show [it] ever received a copy of that letter" (Dkt. No. 68-1, at 15), the bottom of the letter indicates that a copy of it was being sent to the Bank's Chief Executive Officer, David DeMarco, by email.

[2]   Although Plaintiffs contend that the Bank continued to allow withdrawals through July 10, 2021, *see* Dkt. No. 63-1, at 3-4, the Bank has attested, through a declaration submitted by its Chief Executive Officer, David DeMarco, that, starting on May 28, 2021, "aside from two exceptions that resulted from human error (a debit of $68.46 for ADP payroll services on or around June 13, 2021, and a $32 insufficient funds fee on or around July 6, 2021), all debits and checks showing on the account were manually disapproved on the second step [of the bank's internal procedures] and the funds were then returned to the account as a credit." (Dkt. No. 68, at ¶ 12.) Plaintiffs' motion seemingly reflects this same recitation of facts. (Dkt. No. 63-1, at 4) ("Most debits for the period appeared to have been blocked; however, the Bank permitted charges by ADP and assessed an insufficient funds fee against the account.").

> *whether the facilitation of such transactions by providing routine financial services could expose the Banks to liability under Rule 65(d)*. The district court reasonably concluded that Rule 65(d) requires "clear and convincing proof" that "'an enjoined party is substantially intertwined with a non-party,'" and that such proof was lacking here. *Nike IV*, 2020 WL 257475, at *19 (quoting *John Wily & Sons, Inc. v. Book Dog Books, LLC*, 327 F.Supp.3d 606, 638 (S.D.N.Y. 2018)).

*Id.* at 134 (emphasis added).[3]

Based on the specific facts of this case, which indicate the same type of "routine financial services" the Second Circuit highlighted in *Next Investors, LLC*, Plaintiffs have not proved, by clear and convincing evidence, that the Bank aided and abetted Defendants in violation of this Court's PI Order during the six-week delay in restraining Defendants' account. As the Second Circuit has cautioned, contempt orders are a "'potent weapon' . . . to which courts should not resort 'where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct . . . .'" *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (quoting *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967) and *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)). The Court accordingly will not utilize this "potent weapon" at this time, but strongly advises the Bank to keep in better communication with its attorney and to strictly comply with any future PI Order of this Court.

---

[3] Although the Court has not taken into consideration Plaintiffs' reply memorandum of law in support of their motion for civil contempt because it was stricken from the docket as unpermitted, the Court notes that the case on which Plaintiffs rely to support their contention that "carrying out transactions" constitutes "active concert and participation" is unpersuasive. Not only is *Reliance Ins. Co. v. Mast Const. Co.*, 84 F.3d 372 (10th Cir. 1996) not from the Second Circuit, but in it, the Tenth Circuit notes, before remanding the case to the district court for further proceedings to determine "necessary factual findings," that the bank in question "aided and assisted [the defendant] in completing a fairly complicated series of fund withdrawals and transfers," including signing loan documents, securing lines of credit, opening additional accounts, and obtaining cashier's checks. *Reliance Ins. Co.*, 84 F.3d at 377. These facts are different from those asserted here, where Plaintiffs cite routine withdrawals (and deposits) as the basis for contempt. (Dkt. No. 63-1, at 8.)

**ACCORDINGLY,** it is

**ORDERED** that the Plaintiffs' motion for civil contempt (Dkt. No. 63) is **DENIED**.

Date:   January 27, 2022
        Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge